**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LISA ANDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 09 C 2399** |
| **v.** | ) | |
| | ) | **Magistrate Judge Finnegan** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lisa Anderson filed an action seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits under Title II of the Social Security Act. On June 13, 2011, the Court remanded the case to the Administrative Law Judge for further evaluation. Plaintiff now seeks to recover her attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), arguing that the Commissioner's position in defending the ALJ's decision was not "substantially justified." For the reasons set forth below, the Court concludes that the Commissioner's position was substantially justified on one issue concerning the ALJ's borderline age determination, but was not substantially justified on the remaining two issues or overall, and therefore the application for fees is granted.

**BACKGROUND**

Plaintiff applied for disability insurance benefits on August 9, 2006, alleging that she became disabled on August 25, 1996 from a variety of impairments, including a brain tumor, fibromyalgia, depression, detached retinas, cataracts, headaches and a dislocated knee cap. The Social Security Administration denied her application initially and on

reconsideration. Following an administrative hearing, the ALJ found that Plaintiff is not disabled because she is capable of performing a significant number of jobs available in the national economy. The Appeals Council denied Plaintiff's request for review, and she sought relief in this Court pursuant to 42 U.S.C. § 405(g). In support of her motion to reverse the Commissioner's decision, Plaintiff argued that the ALJ (1) erred by applying the age categories of the regulations in a mechanical manner to classify her as a "younger individual" rather than considering whether her borderline age made it more appropriate to categorize her in the next higher age category, resulting in a finding of disabled; (2) erred by omitting discussion of certain significant medical evidence in determining Plaintiff's residual functional capacity ("RFC"); and (3) erred in discounting Plaintiff's testimony about the severity of her headaches.

The Court agreed with Plaintiff's first argument, concluding that the ALJ failed to show that he considered Plaintiff's borderline age or otherwise explain why he used her chronological age instead of placing her in the next higher age category, which would have resulted in a finding that she is disabled. As a result, the age category determination was not supported by substantial evidence. *See Freundt v. Massanari*, No. 00 C 4456, 2001 WL 1356146, *19 (N.D. Ill. Nov. 2, 2001) (citing *Daniels v. Apfel*, 154 F.3d 1129, 1136 (10th Cir. 1998); *Graham v. Massanari*, No. 00 C 4669, 2001 WL 527326, *8 (N.D. Ill. May 9, 2001). In reaching this conclusion, the Court noted that there is a Circuit split concerning the obligations of an ALJ in a borderline age situation. The Third and Tenth Circuits have held that an ALJ must show in his decision that he has performed the analysis required by the regulations in a borderline age situation. *See Kane v. Heckler*, 776 F.2d 1130, 1132-34 (3d Cir. 1985)*; Daniels*, 154 F.3d at 1136 (an ALJ must make an explicit age category

2

determination supported by substantial evidence).   But the Sixth, Ninth, and Eleventh Circuits have rejected the argument that the borderline-age regulations are applied mechanically in violation of the regulations when the ALJ fails to explicitly indicate that he considered the claimant's borderline age status.  *See Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008)*; Lockwood v.Comm'r of Soc. Sec. Admin.,* 616 F.3d 1068 (9th Cir. 2010);  *Miller v.Comm'r of Soc. Sec.,* 241 F. App'x 631, 635 (11th Cir. 2006).   The Court further noted that the Seventh Circuit has not explicitly ruled on this issue, but that several decisions in this district have adopted the Tenth Circuit approach.  Thus, the Court declined to adopt the position advocated by the Commissioner, for which he relied on Sixth Circuit case law and the Social Security Administration's HALLEX guidance document. (Doc. 22, at 10-12).

The Court also agreed with Plaintiff that the RFC determination was flawed because the ALJ failed to discuss medical records that support Plaintiff's claim of disability or to explain how they support his conclusion that Plaintiff experienced steady improvement and was able to control her headaches with medication.  *See* SSR 96-8p, 1996 WL 374184, at *5 ("The RFC assessment must be based on *all* of the relevant evidence in the case record . . . .") (emphasis in original); *see also Alexander v. Astrue*, No. 09 C 3406, 2010 WL 3199356, at *10 (N.D. Ill. Aug. 10, 2010) ("The ALJ must examine the entire record to construct an RFC and confront evidence that does not support his determination.").  By omitting any discussion of Dr. Diamond's treatment notes concerning the frequency of Plaintiff's headaches, potential triggers, and her methods of treating them, the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion that Plaintiff is capable of full-time employment.  *See Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

3

Finally, the Court agreed with Plaintiff's argument that the ALJ erred in discounting her testimony about the severity of her headaches. Specifically, Plaintiff's mere "determination" to work, without more, was not a proper basis for undercutting her credibility. *See Bartell v. Cohen*, 445 F.2d 80, 82 (7th Cir. 1971) ("[P]laintiff's attempts to secure employment are relevant only to her motivation and not to whether she was, in fact, disabled."); *see also Heldenbrand v. Chater*, 132 F.3d 36 (Table), at *14 (7th Cir. 1997). Nor was it proper for the ALJ to discount Plaintiff's credibility based on his conclusion that her headaches were controlled by medication and had steadily improved where, as noted above, these conclusions were contrary to a number of treatment records that the ALJ failed to discuss. *See Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (ALJ's credibility finding is not binding if it is "based on errors of fact or logic."). For all these reasons, the Court remanded the case for further proceedings.

On September 8, 2011, Plaintiff filed a timely application asserting that she is the prevailing party in this action and requesting fees in the amount of $7,682.03. (Docs. 31, 32). *See* 28 U.S.C. § 2412(d)(1)(B); *see also Shalala v. Schaefer*, 509 U.S. 292, 302 (1993). The Commissioner does not object to the reasonableness of the specific amount requested, but argues that Plaintiff is not entitled to any fees at all. In her reply memorandum, Plaintiff amended her fee request to include time spent preparing that document and now seeks a total of $8,185.90 in fees.[1] (Doc. 35, at 6).

---

[1] The reply memorandum claims a total fee amount of $8,186.40, however this calculation is incorrect, given that the initial fee request is $7,682.03 and the supplemental request is an additional $503.87, which totals $8,185.90. (Doc. 31, at 9; Doc. 35, at 6).

## DISCUSSION

### A.    Standard of Review

Under the EAJA, a court may award attorneys' fees to a prevailing party in a civil suit against the government if the government's position was not "substantially justified."  28 U.S.C. § 2412(d)(1)(A).  To be eligible to receive a fee award, a party "must show that: (1) she was a prevailing party; (2) the Government's position was not substantially justified; (3) there existed no special circumstances that would make an award unjust; and (4) she filed a timely and complete application for fees."  *Potdar v. Holder*, 585 F.3d 317, 319 (7th Cir. 2009) (quoting *Kholyavskiy v. Holder*, 561 F.3d 689, 690 (7th Cir. 2009)).  Here, it is undisputed that Plaintiff filed a timely petition supported by an itemized statement and is a "prevailing party," *see Schaefer*, 509 U.S. at 300, and the Commissioner does not assert that "special circumstances" exist.  Thus, the only issue is whether the government's position was substantially justified, meaning "justified to a degree that could satisfy a reasonable person."  *Potdar*, 585 F.3d at 319 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  To be substantially justified, a position must have a reasonable basis in both fact and law, and there must be a reasonable connection between the facts and the legal theory.  *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009); *Cunningham v. Barnhart*, 440 F.3d 862, 864 (7th Cir. 2006).

The EAJA "'is not an automatic fee-shifting statute,'" so merely prevailing against the government does not entitle a party to fees.  *Potdar*, 585 F.3d at 319 (citation omitted); *see also Frost v. Astrue*, 369 F. App'x 721, 722 (7th Cir. 2010) (citing *United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 387 (7th Cir. 2010) (holding in the consolidated case of *Park v. Astrue* that a remand does not necessarily entitle a claimant

5

to attorneys' fees); *Berman v. Schweiker*, 713, F.2d 1290, 1295 n.18 (7th Cir. 1983) (holding that "merely because the government loses a case, a presumption does not arise that the government's position was not substantially justified."). Nor does a fee determination rest solely on the number of issues on which the plaintiff prevailed; rather the inquiry involves an assessment of the complete litigation, including pre-litigation conduct and the ALJ's decision, and the Commissioner bears the burden of proving that his position was substantially justified overall. *Stewart*, 561 F.3d at 683-84; *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006).

**B.    Analysis**

The Commissioner argues that he was substantially justified in defending the ALJ's decision on all three issues Plaintiff raised because "the government had a reasonable basis in law and fact for its position." (Doc. 34, at 4). As discussed below, the Court agrees as to the borderline age issue, but disagrees on the remaining two issues.

Concerning the borderline age determination, the Commissioner argues that his position was justified because "this Court acknowledged that the Seventh Circuit has not expressly ruled on the issue whether an ALJ must explicitly show in his decision that he considered the borderline age issue." (*Id.*, at 8). This precise argument was addressed by another court in this Circuit in an opinion denying the plaintiff's motion for attorneys' fees under the EAJA where the court had declined to adopt the Sixth Circuit's holding on borderline age and instead remanded based on the same contrary Tenth Circuit and Northern District of Illinois cases the Court relied upon here. *See Zent v. Astrue*, No. 1:10-cv-80, 2011 WL 1458481, *4 (N.D. Ind. Apr. 15, 2011). As the *Zent* court correctly observed, the fact that it remanded the case on this ground does not establish that the

6

Commissioner's position had no reasonable basis in law and fact.  *Id.* (citing *Kolman v. Shalala*, 39 F.3d 173, 177 (7th Cir. 1994) (finding substantial justification where Commissioner's position was supported by case law from other circuits)); *see also Kusilek v. Barnhart*, No. 04-C-310, 2005 WL 567816, at *4-5 (W.D. Wis. Mar. 2, 2005) (finding substantial justification in light of unsettled Seventh Circuit case law and split with other circuits); *Beno v. Shalala*, No. 91 C 0544, 1994 WL 8236, at *3 (N.D. Ill. Dec. 29, 1993) (same)).  Likewise, in this case the Commissioner was substantially justified in the position he took in light of the undeveloped Seventh Circuit authority on this issue and the existence of case law from other circuits that supports his position.  Thus, the Commissioner's position satisfies the requirement that it be reasonably grounded in the facts and law.

The Commissioner's position on the remaining two issues, however, was not substantially justified.  The Commissioner disputes Plaintiff's argument that he was not justified in his arguments concerning the ALJ's failure to discuss certain evidence related to Plaintiff's headaches or his failure to include in Plaintiff's RFC any limitations that her headaches might impose on her ability to sustain full-time work.  The Commissioner argues that although the ALJ did not discuss all the progress notes from Dr. Seymour Diamond of the Diamond Headache Clinic, "a review of those notes show[s] that Plaintiff did, at times, experience improvement in her headaches with medication." (Doc. 34, at 5).  As the Court observed, however, the ALJ relied primarily on the treatment notes of Plaintiff's neurosurgeon, Dr. Gail Rosseau, to conclude that Plaintiff's headaches had improved and were controlled with medication, and did not discuss the contrary statements documented in Dr. Diamond's treatment notes.  (Doc. 29, at 27).  As the Court indicated, Dr. Diamond's notes show that Plaintiff consistently complained of two to three moderate to severe

7

headaches per week from 1997 up through and beyond the date last insured ("DLI") of December 31 2001. (*Id.*, at 27-28). Indeed, Dr. Diamond's notes indicate that in November 2001, less than two months before the DLI, Plaintiff complained of having six or seven headaches at a pain level of 7 out of 10 that summer and experiencing headaches twice a week that fall. (*Id.*, at 28). The ALJ neither discussed these treatment notes nor explained how they support his conclusion that Plaintiff experienced steady improvement and had her headaches under control with medication. To the contrary, the ALJ twice stated that Plaintiff was no longer taking pain medication at all, despite the records showing that Dr. Diamond routinely prescribed Tylenol #3 both before and after the DLI. (*Id.*). In addition, Dr. Diamond noted that Plaintiff's headaches cause her to be sensitive to light and sounds, and Plaintiff testified that her headaches could be triggered by light, sounds, odors, and stress. (*Id.*, at 29.). Yet the ALJ made no mention of this evidence or why he rejected it, and did not accommodate these sensitivities in the RFC. While the Commissioner makes much of the treatment records from Dr. Rosseau that support the ALJ's conclusions, he fails to cite any evidence that the ALJ considered the contrary records from Dr. Diamond in fashioning Plaintiff's RFC. *See Bassett v. Astrue*, 641 F.3d 857, 860 (7th Cir. 2011) ("[I]t typically takes . . . something like the ALJ's ignoring or mischaracterizing a significant body of evidence" to render the Commissioner's position unjustified") (citing *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004). Accordingly, because the ALJ improperly ignored significant medical evidence that supported Plaintiff's allegations, his position was not substantially justified.

Finally, the Commissioner disputes that he was not substantially justified in his position concerning the ALJ's credibility determination. First at issue is Plaintiff's testimony

that she was "determined" to find work and unsuccessfully sought employment at the local grocery and as a secretary, "[b]ut when you put down that you have a brain tumor on an application, there's very little calls back [sic]." (Doc. 29, at 33). As this Court noted, under governing Seventh Circuit authority, on these facts alone, "[P]laintiff's attempts to secure employment are relevant only to her motivation and not to whether she was, in fact, disabled." *Bartell*, 445 F.2d at 82; *see also Heldenbrand*, 132 F.3d 36 (Table), at *14. Here, Plaintiff merely testified that she was "determined" to work without representing that she was, in fact, capable of working. *Cf. Knox v. Astrue*, 327 F. App'x 652, 656 (7th Cir. 2009) (ALJ did not err in discounting claimant's credibility where he applied for a strenuous welder position and denied in the application the back pain upon which his disability claim was based); *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) (ALJ did not err in discounting claimant's credibility where he applied for unemployment benefits and represented to state authorities and prospective employers that he was able to work). Thus, without more, Plaintiff's efforts to find work were not a proper basis for the ALJ to discount her credibility.

In any event, the Commissioner seemingly makes no argument that he was substantially justified in contending that the ALJ properly discounted Plaintiff's credibility based on her efforts to seek employment. (Doc. 34, at 7). Instead, he merely notes that this Court "was troubled" by the ALJ's consideration of this evidence – indeed, the Court found that the ALJ erred by relying on this testimony – and now argues that the credibility finding is nonetheless substantially justified based on the ALJ's reliance on "Plaintiff's use of medication and other measures to relieve pain." (*Id.*) As discussed earlier, however, the ALJ's conclusions that Plaintiff's headaches were controlled by medication and had steadily

9

improved are contrary to a number of Dr. Diamond's treatment records that the ALJ failed to discuss, and thus, they cannot support his credibility determination. *See Bassett*, 641 F.3d at 860.

In addition, the Commissioner argues that the credibility finding is justified because the ALJ "considered Plaintiff's activities in assessing her credibility." (Doc. 34, at 7). But the record does not support this contention. The Commissioner asserts that the ALJ "recognized that Plaintiff testified to very limited activities" (*id.*), however the only statements in the ALJ's decision concerning Plaintiff's activities are a few sentences about the disabling effects of her headaches, which the ALJ considered in determining, at Step 2 of the sequential analysis, whether Plaintiff has a severe impairment. (R. 61). Significantly, the decision does not reference this evidence at Step 4 of the analysis, where the ALJ assessed Plaintiff's credibility in determining her RFC. (R. 62-64). Moreover, the additional factual support the Commissioner cites concerning Plaintiff's activities consists of Plaintiff's hearing testimony and certain treatment notes, but none of this evidence is referenced in the ALJ's decision. (Doc. 34, at 7). Since the ALJ did not offer this evidence as a basis for his credibility finding, the Commissioner's lawyers may not rely on it now, as this violates the *Chenery* doctrine, "which forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)); *see also Stewart*, 561 F.3d at 684 ("[I]n reviewing [an ALJ's] determination the court must confine itself to the reasons supplied by the ALJ.").

In summary, the Commissioner's position on the borderline age issue had a reasonable basis in fact and law due to the circuit split on this issue and the absence of any

Seventh Circuit precedent addressing the issue directly. Under these circumstances, the Commissioner was substantially justified in arguing that this Court should adopt the holding of another circuit court that had ruled on the issue. However, the Commissioner's positions on the two remaining issues were not substantially justified because the ALJ improperly ignored significant medical evidence that supported Plaintiff's allegations, and because the ALJ's credibility finding improperly relied on Plaintiff's determination to find work and is contrary to unanalyzed evidence from Dr. Diamond. Given the absence of substantial justification for the Commissioner's positions concerning the RFC determination and the credibility assessment, his overall position also is not substantially justified. Accordingly, Plaintiff is entitled to an award of fees.[2]

---

[2] The Commissioner argues that a fee award, if any, should be paid to Plaintiff, rather than directly to her attorney as she requests, citing the Supreme Court's opinion in *Astrue v. Ratliff*, 130 S.Ct. 2521, 177 L.Ed.2d 91 (2010). (Doc. 34, at 9-10). But *Ratliff* is not applicable in cases, like this one, where the plaintiff assigned the fee award to her attorney in advance, as evidenced here by the retainer and fee agreement attached to Plaintiff's motion (Doc. 31-2, at 1). *See Mathews-Sheets v. Astrue*, 653 F.3d 560, 565-566 (7th Cir. 2011). Nor does the Commissioner argue that the assignment should be ignored and the fee paid directly to Plaintiff on the ground that she owes a debt to the government. *See id.* Accordingly, the fee award is payable to Plaintiff's attorney pursuant to the retainer and fee agreement.

11

## **CONCLUSION**

For the reasons stated above, the Plaintiff's Motion for Attorney's Fees is granted in the amount of $8,185.90.

ENTER:

Dated: November 2, 2011

SHEILA FINNEGAN
United States Magistrate Judge